THE STATE EX REL. CONSOLIDATED SCHOOL DISTRICT NO. 9 OF NEW MADRID COUNTY v. L. D. THOMPSON, State Auditor.—30 S. W. (2d) 603.

Court en Banc, July 17, 1930.

*Sharp & Baynes* and *M. E. Montgomery* for relator.

*Stratton Shartel*, Attorney-General, and *Don Purteet*, Assistant Attorney-General, for respondent; *W. C. Sanders* of counsel.

1172

FRANK, J.—Mandamus to compel respondent as State Auditor to register bond No. 1 of a $32,000 issue of bonds authorized by Consolidated School District No. 9 of New Madrid County, Missouri, for the purpose of building a schoolhouse in said district.

The issuance and service of the writ was waived and relator's petition was taken as and for the writ. Respondent made return thereto and relator filed a motion for judgment on the pleadings.

The legality of the organization of the consolidated district is the only question presented in this case. Respondent concedes that if the district was legally organized the bonds should be registered. In State ex rel. Buckley et al., School Directors, v. Thompson, 323 Mo. 248, 19 S. W. (2d) 714, we held that in a mandamus proceeding to compel the State Auditor to register bonds of a consolidated school

district, he could question the legality of the organization of the district. We refer the reader to that case for our reasons for so holding.

The consolidated district in question was organized under Sections 11257, 11258 and 11259, Revised Statutes 1919, as amended by subsequent acts of the General Assembly. The territory included within the consolidated district, and from which it was formed, is the Town School District of New Madrid and sixty acres of un-inhabited territory, composed of three separate twenty-acre tracts detached from three separate common school districts adjoining said town district.

Respondent contends that the intent and purpose of the Legis-lature in providing for consolidated school districts was to make possible larger and better schools by the combination of territory and resources, and thus provide better schools for a greater number of school children. Based on this contention, the claim is that the county superintendent in designating the boundaries of the con-solidated district by adding to the Town District of New Madrid three widely separated and uninhabited twenty-acre tracts of land did not comply with the provisions of Section 11259, Revised Statutes 1919, but arbitrarily and capriciously abused the discretion vested in him by said statute, and by so doing thwarted the purpose and intent of the Legislature in enacting the statute. The pleadings present this sole issue. It is admitted that all other terms and conditions of the statute were complied with in the organization of the consolidated district.

That part of Section 11259, Revised Statutes 1919, pertinent to the issue presented, reads as follows:

"When the resident citizens of any community desire to form a consolidated district, a petition signed by at least twenty-five qualified voters of said community shall be filed with the county superintendent of public schools. On receipt of said petition, it shall be the duty of the county superintendent to visit said com-munity and investigate the needs of the community and determine the exact boundaries of the proposed consolidated district. In de-termining these boundaries, he shall so locate the boundary lines as will in his judgment form the best possible consolidated district, having due regard also to the welfare of adjoining districts. The county superintendent of schools shall call a special meeting of all the qualified voters of the proposed consolidated district for con-sidering the question of consolidation. He shall make this call by posting within the proposed district ten notices in ten public places, stating the place, time and purpose of such meeting. At least fifteen days' notice shall be given and the meeting shall commence at two o'clock P. M. on the date set. The county superintendent shall

also post within said proposed district five plats of the proposed consolidated district at least fifteen days prior to the date of the special meeting, etc."

This statute has been before the court in a number of cases where it is held that the court will not review the action of the County Superintendent of Schools in determining the boundaries of a consolidated school district. In State ex rel. v. Glaves, 268 Mo. 100, 104, 105, 186 S. W. 685, we said:

"In forming the new district common school districts were divided. It is insisted the welfare of the excluded parts of such districts was not given due consideration. The statute does not make this a judicial question, but invokes for its settlement the discretion of the superintendent, in the first place, and then submits it, with the rest, to the voters at the election required to be held."

In State ex rel. v. Wright, 270 Mo. 376, 387, 194 S. W. 35, the point is ruled thus:

"The question of the correctness of the judgment exercised and the regard by him had to the welfare of adjoining districts is required (as the sole way of correcting his exercise of bad judgment and discretion) to be passed on by the voters at a special election held for this purpose."

In State ex rel. v. Stephens, 243 S. W. 89, 90, a like question was disposed of as follows:

"It is insisted that some of the territory included in the district is remote from the place where the schoolhouse is to be erected, and that this invalidates the incorporation. The duty to delimit the proposed district is imposed upon the county superintendent in the first place (State ex inf. v. Jones, 266 Mo. 1. c. 197, 181 S. W. 50), and the question whether the district is to be formed as proposed is then one to be determined by the voters in the territory affected. Their conclusion is final, at least in circumstances like those in this case. The Legislature has not left this question to the courts, but to the voters of the district."

This Court en Banc in State ex inf. Thompson ex rel. v. Scott et al., 264 S. W. 369, 372, discussed and disposed of a kindred question as follows:

"The determinaton of the boundaries of the proposed consolidated school district is one for the sound discretion of the County Superintendent of Schools. The courts have uniformly refused to review the action of such superintendent. The qualified voters, living within the boundaries of such proposed consolidated district, as fixed by the County Superintendent of Schools, have full power to approve or reject his action. See cases heretofore cited."

It appears to be the settled construction of the statute that the determination of the boundaries of a proposed consolidated school district, is left, in the first instance, to the County School Superin-

tendent. It is then left to the voters of the proposed district, and not to the courts, to either approve or reject the action of the County Superintendent.

It may be, as contended by respondent, that the statute as construed would permit a town school district to organize a consolidated district, as was done in this case, for the sole purpose of receiving the state aid provided by statute for consolidated districts, but we must interpret the law as written. The remedy for the evil, if it be an evil, dwells with the Legislature and not with the courts.

In State ex rel. Thudium v. Consolidated School District No. 2, 234 S. W. 54, 56, it is said:

"The statute made it his duty to locate the boundary lines as in his judgment would form the best possible consolidated district, always mindful of the welfare of adjoining districts. These questions were discretionary, and appealed to his sound judgment, and are not judicial questions, so, therefore, the judiciary would not be at liberty to interfere with the exercise of a discretion by this official, except that same had been abused, and no such question has been raised here."

Respondent relies on what is said in that case as indicating that where, as here, it is charged that the County Superintendent abused his discretion in determining the boundaries of the district, such action on his part might be reviewed by the courts.

What was said in that case about judicial review of the superintendent's discretion, was not necessary to a decision of that case. Besides it is contrary to the later rulings on that subject, which we have heretofore cited.

For the reasons stated the alternative writ of mandamus heretofore issued should be made peremptory. It is so ordered. All concur, except *White* and *Gantt, JJ.,* absent.